IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| O9 SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-3245-L-BN |
| | § | |
| SAP SE, SAP AMERICA, INC., STEPHAN DE BARSE, STIJN-PIETER VAN HOUTEN, and SEAN ZONNEVELD, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff o9 Solutions, Inc. ("o9") filed this lawsuit alleging that the defendants misappropriated trade secrets, breached agreements, and tortiously interfered with contractual relations. *See* Dkt. No. 1 (asserting claims for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") [Count I] and the Texas Uniform Trade Secrets Act ("TUTSA") [Count II]; breach of confidentiality and stock option agreements [Counts III and IV]; and tortious interference with contractual relations [Count V]).

Defendants Stephan de Barse, Stijn-Pieter van Houten, and Sean Zonneveld (the "Individual Defendants") moved to dismiss o9's misappropriation claims under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 20. The Individual Defendants also moved to dismiss this lawsuit on *forum non conveniens*, arguing that it belongs in the Netherlands. *See* Dkt. Nos. 22 & 23. And Defendants SAP SE and SAP America, Inc. (collectively "SAP" or the "SAP Defendants") moved to dismiss the

complaint under Rule 12(b)(6) and, in the alternative, moved for a more definite statement under Federal Rule of Civil Procedure 12(e). *See* Dkt. No. 25.

United States District Judge Sam A. Lindsay then referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 26.

The parties have briefed the motions. *See* Dkt. Nos. 43-45, 48, 50, & 51.

And, for the reasons and to the extent set out below, the Court should deny all three motions.

**Discussion**

The parties' briefing is extensive and helpful, so the undersigned can keep this relatively short.

After digesting that briefing, it's apparent that what this case is about differs starkly based on which side of the "v." you land. To o9, the SAP Defendants are a joint operation that collectively acted unlawfully by "working in concert with" the Individual Defendants "to steal and use thousands of trade secrets owned by … an American technology company incorporated and headquartered in Dallas, Texas." Dkt. No. 45 at 7. While the Individual Defendants assert that this is no more than "an employment dispute between three Dutch residents and their former employer." Dkt. No. 48 at 2; *see also id.* at 10 ("In a real sense, this Court will learn, this dispute is about a business divorce, with all the attendant emotions and feelings of betrayal.").

One side's chosen theme may ultimately carry the day.

But which side prevails as to these preliminary motions boils down to the burdens associated with each.

And two truths that underlie the applicable legal standards are (1) a motion under Rule 12(b)(6) is "not meant to resolve disputed facts or test the merits of a lawsuit" but "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief," *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020), and (2), considering a motion to dismiss under *forum non conveniens*, "the burden" – which "runs to all the elements of the *forum non conveniens* analysis" – "is on the movant to establish that an alternative forum would be clearly more convenient," *Kimberly-Clark Corp. v. Continental Cas. Co.*, No. 3:05-cv-475-D, 2005 WL 2679698, at *3 (N.D. Tex. Oct. 19, 2005) (cleaned up); *cf. In re Volkswagen*, 545 F.3d 304, 314 (5th Cir. 2008) (en banc) ('[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

And, so, because, as to the content challenged, o9's complaint sets forth plausible claims for relief and because, even if the Netherlands is both an available and adequate forum, the Individual Defendants have not demonstrated that the Netherlands is clearly more convenient – and have thus not shown grounds to dismiss under *forum non conveniens* – all motions should be denied for the reasons more fully set out below.

But the undersigned will first address what appeared to be a compromise to resolve the Individual Defendants' motions. o9's response to the *forum non conveniens*

motion concludes by explaining that, if the Court is inclined to grant that motion, it should sever the Individual Defendants and retain jurisdiction over the SAP Defendants. *See* Dkt. No. 45 at 30-31. And the Individual Defendants reply that they "would not oppose that alternative." Dkt. No. 48 at 11.

While courts typically are all ears when the parties appear to reach an agreement, to grant this relief would be error.

The United States Court of Appeals for the Fifth Circuit recently addressed "using severance and transfer as a permissible strategy of case management" in the context of a motion to transfer under 28 U.S.C. 1404(a):

> A court must "weigh carefully" the comparative inconvenience of splitting the suit versus the advantages to be gained from a partial transfer. It should not sever if the defendant not transferred is "so involved" in the controversy transferred to another court that partial transfer would require the same issues to be litigated in two places. "Manifestly," Plaintiffs are disadvantaged by the expense and inconvenience of having to litigate in two disparate fora and by the possibility of inconsistent results. And the public has an interest in the comparative speediness and cost-savings from utilizing a single forum for the issues arising out of one episode.

*Def. Distributed v. Bruck*, 30 F.4th 414, 428 (5th Cir. 2022) (quoting and discussing *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148-49 (5th Cir. 1984)); *see also In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014) ("[O]ur jurisprudence suggests that the severance inquiry is different – and more focused on judicial efficiency – when it is combined with a section 1404 motion to transfer than when the severed case would remain in the original judicial district."); *cf. Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60-61 (2013) ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which

the transferee forum is within the federal court system" and, for which, "Congress has replaced the traditional remedy of outright dismissal with transfer." And, so, Section 1404(a) does not directly apply to a request to dismiss this lawsuit in favor of litigation in the Netherlands. Still, "both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard." (cleaned up)).

Whichever side's view of this case ultimately prevails, neither side now argues that the Individual Defendants are indirectly connected to this dispute or to o9's claims against the SAP Defendants. *Cf.* Dkt. No. 48 at 11 ("[J]udicial efficiency and international comity would best be served by having the entire factually related dispute resolved in the Netherlands.").

And, so, the Court cannot "sever and transfer" consistent with controlling circuit precedent.

## I. The Court should deny the 12(b)(6) motions to dismiss and decline to order a more definitive statement under 12(e).

Considering a motion under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

But a plaintiff still must plead "enough facts to state a claim to relief that is plausible on its face" and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

So a court's "obligation [is] to accept [the] complaint's factual allegations as true and assess whether those facts permit a reasonable inference that [a defendant] is liable." *Sewell*, 974 F.3d at 581; *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions.

So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

Summed up, "to survive" dismissal under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Rule 12(e) offers an alternative to outright dismissal under Rule 12(b)(6): "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see also I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-cv-2410-G, 2017 WL 1281130, at *4 (N.D. Tex. Apr. 6, 2017) ("When a party moves for a more definite statement, 'the court must determine whether the complaint is such that a party cannot reasonably be required to frame a responsive pleading.'" (quoting *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959))).

Sufficient notice derives from Rule 8(a)(2), "which provides that a complaint

must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz*, 534 U.S. at 513.

"Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"And the concept of sufficient or fair notice must be understood consistent with" the pleading requirements as explained in *Twombly* and *Iqbal*, set out above, which require "just 'enough facts to state a claim to relief that is plausible on its face.'" *Rountree v. Fed. Express Dall.*, No. 3:23-cv-1089-N-BN, 2023 WL 4533929, at *2 (N.D. Tex. July 12, 2023) (quoting *Twombly*, 550 U.S. at 570).

Reading these legal standards back-to-back, it's easy to see why 12(e) motions "are generally disfavored." *SB Premium, LLC v. Wolfpack Wholesale, Inc.*, No. 3:17-cv-931-L, 2018 WL 4362726, at *12 (N.D. Tex. Sept. 13, 2018) ("Rule 12(e) motions … are generally disfavored given the liberal pleading standard set forth in Rule 8(a) and are normally granted only when a complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it. When a defendant complains of matters that can be clarified and developed during discovery, not matters that impede his ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted.").

**A. o9's use of group pleading does not run afoul of Rule 8 such that the complaint should be dismissed under Rule 12(b)(6) or that Rule 12(e) requires a more definite statement.**

Starting with the SAP Defendants' 12(b)(6) motion and alternative request

under 12(e), they assert that dismissal (or at least a more definite statement) is required because o9 has impermissibly group pleaded – that is, it has asserted allegations against SAP SE and SAP America, Inc. (and/or the Individual Defendants) collectively without further alleging which particular defendant did what – "to obscure the fact that this is really a suit about conduct by Dutch citizens formerly employed by o9 in the Netherlands, who were hired by an SAP affiliate in the Netherlands." Dkt. No. 51 at 2.

> The Opposition does not identify a single specific act of misappropriation or tortious interference attributable to SAP America or SAP SE because the Complaint contains none. Instead, o9 alleges facts (1) attributed indiscriminately to "SAP"; (2) conducted during the normal course of business; and (3) that fail to create an inference that either SAP SE or SAP America knew about, encouraged, or benefited from wrongdoing allegedly committed in the Netherlands by Dutch nationals.

*Id.*

Group pleading is not inherently evil.

Rule 8 only "requires pleadings to give 'Defendants minimally adequate notice of Plaintiffs' claims in [any] matter and the bases therefor.'" *HCL Techs. Ltd. v. Atos S.E.*, No. 3:23-cv-868-L, 2024 WL 1076821, at *4 (N.D. Tex. Jan. 31, 2024) (quoting *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)), *rec. accepted*, 2024 WL 1094697 (N.D. Tex. Mar. 12, 2024).

But "group pleading must not 'prevent the court from discerning which defendants are allegedly responsible for which allegedly unlawful acts.'" *Id.* (cleaned up; quoting *Bailey v. Mansfield Indep. Sch. Dist.*, 425 F. Supp. 3d 696, 713 (N.D. Tex. 2019)).

And, while in most instances, a court's "review is particular to each defendant,"

*Yang v. Nobilis Health Corp.*, No. 20-20538, 2021 WL 3619863, at *2 (5th Cir. Aug. 13, 2021) (per curiam) (citation omitted), whether group pleading obscures a court's ability to assess whether a plaintiff's complaint affords Rule 8's minimally adequate notice ultimately turns on the nature of the claims alleged, *see, e.g.*, *Armstrong*, 60 F.4th at 274-75 ("Armstrong's allegation also suffers from the distinct problem of group pleading: she simply faults the eight Law Enforcement Defendants as a group without factual material suggesting that any particular defendant suppressed evidence. Armstrong's allegation is independently insufficient for that reason since a [42 U.S.C.] § 1983 plaintiff 'must plead that each Government-official defendant, though the official's own individual actions, has violated the Constitution.'" (quoting *Iqbal*, 556 U.S. at 676)); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007) (similar, in that, to determine whether qualified immunity attaches, a court must consider each official's actions separately); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (requiring plaintiffs suing under the PSLRA to "distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud" (cleaned up)); *Caliskan v. Wells Fargo Bank, N.A.*, No. 3:26-cv-2097-G-BN, 2026 WL 2272391, at *1 (N.D. Tex. Aug. 6, 2026) (noting that these principles apply where a plaintiff brings employment claims under Title VII and 42 U.S.C. § 1981 against his entity employer and its employees (who may be his one-time coworkers and supervisors)).

And o9's group pleading does not deprive SAP America or SAP SE of minimally adequate notice here, where o9 intends to allege that both corporate defendants

engaged in the conduct underlying its allegations and has offered factual content from which the Court may infer that such collective action is plausible, including that both entities hire employees through the same website. *See* Dkt. No. 1, ¶ 37; *see also, e.g.*, Dkt. No. 43 at 15-16 (citing Dkt. No. 1, ¶¶ 18, 34, 35, 37, 68). *Compare HLC Techs.*, 2024 WL 1076821, at *4-*5 ("[W]hile affiliation is not sufficient to meet Rule 8's requirements, HCL alleges that the 'Atos Defendants' are 'owner[s] and manager[s] of the CNA Defendants' IT operations.' Mutual ownership, as alleged, is a fact that shows the relationship between the defendants – which is a factor that other courts have looked to in determining whether the complaint adequately differentiated defendants." And, "[a]lthough HCl does not differentiate the Atos Defendants in the substantive parts of the complaint, HCL's grouping of various Atos entities as "Atos Defendants" still properly puts the Defendants on notice that plaintiff attributes the alleged misconduct to their joint operation as affiliated entities that operate collectively. ATC And none of the causes of action against the Atos Defendants could only be committed by a singular person, rather than a group, so as to require individual pleading for each defendant. And, so, HCL has not engaged in impermissible 'group pleading,' and its claims should not be dismissed on this basis." (cleaned up)).

**B. o9 has alleged plausible misappropriation claims.**

The Individual Defendants also move to dismiss the DTSA and TUTSA claims under Rule 12(b)(6) for o9's failure to plausibly allege "what are the trade secrets" and who misappropriated them. *E.g.*, Dkt. No. 50 at 1 ("Plaintiff's Opposition never answers the two central questions: (1) what are the trade secrets at issue? and (2)

what did each Individual Defendant actually do to misappropriate them?").

> The DTSA and TUTSA provide nearly identical causes of action for trade secret misappropriation. While the DTSA additionally requires that the trade secret relates to a product or service used in interstate commerce, both require a plaintiff to allege that a trade secret exists and that the defendant misappropriated it. Likewise, the statutes share nearly identical definitions of "misappropriation" and "trade secret." Due to these commonalities, courts often discuss the claims jointly….
>
> Trade secrets include all forms and types of financial, business, scientific, technical, economic, or engineering information, including compilations, that the owner has taken reasonable measures to keep secret and that derive independent economic value, actual or potential, from not being generally known. Whether a trade secret exists is a question of fact. Courts look to six factors when determining whether a trade secret exists:
>
> > (1) the extent to which the information is known outside of the plaintiff's business; (2) the extent to which it is known by employees and others involved in its business; (3) the extent of the measures taken by it to guard the secrecy of the information; (4) the value of the information to it and to its competitors; (5) the amount of effort or money expended by it in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
>
> The DTSA and TUTSA provide that misappropriation includes disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret and acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means. Improper means includes breach or inducement of a breach of a duty to maintain secrecy. In other words, misappropriation occurs when the trade secret was acquired through a breach of a confidential relationship or discovered by improper means and the trade secret was used without authorization.

*Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 559-60 (N.D. Tex. 2024) (cleaned up).

To plausibly allege the existence of a trade secret, a plaintiff need not

> provide a specific description of the trade secret. It is sufficient if the allegations demonstrate that at least some aspects of the information at issue constitute a trade secret. Consequently, courts routinely find a

> plaintiff's allegations to be sufficient if they identify specific groupings of information that contain trade secrets, identify the types of trade secrets contained in the groupings, and explain how the alleged trade secrets were maintained and treated as trade secrets. For example, [identifying] specific documents along with a summary that the documents contained trade secrets related to customer information and financial data [has been found] sufficient.

*Id.* at 561 (cleaned up).

o9's complaint contains sufficient factual allegations to support each of these three requirements, and, so, o9 has plausibly alleged the existence of a trade secret, as explained in detail in o9's opposition to the motion to dismiss, *see* Dkt. No. 44 at 9-20, and based on the undersigned's independent review of the complaint.

For example, o9 identifies eight groupings – "(1) o9's design, architecture, implementation, and methodology (and the development, testing, and implementation thereof) for its core Digital Brain platform and related technologies; (2) o9's products and solutions roadmap; (3) o9's client-specific capabilities, solutions, and test cases; (4) o9's sales and marketing strategies; (5) o9's customer lists and customer intelligence; (6) o9's business and partnership proposals; (7) o9's competitive intelligence; and (8) o9's financial information," Dkt. No. 1, ¶ 53 – and then, for each group, o9 identifies examples of documents in each that it has marked as "confidential and proprietary," *id.*, ¶ 54, and alleges that "Defendants used one or more of o9's Misappropriated Trade Secrets in connection with SAP's business planning and supply chain management solutions, including its [Integrated Business Planning] offerings," *id.*

o9 also alleges specific factual content as to how it maintained and treated its trade secrets, including that it "requires non-disclosure and confidentiality

agreements with [its] suppliers, vendors, contractors, and other third-parties before providing access to [its] trade secrets and implements policies concerning [its] standard information classification system, including how files are to be assessed and designated as confidential"; that it "uses encryption, password protection, and device authentication, among many other measures, and maintains high standards relating thereto, restricts access to its file repositories on a need-to-know basis, and uses locked buildings, security cameras, guards, and other measures to control access to its physical facilities"; and that "enters into agreements with employees that provide detailed confidentiality obligations to o9," which include "the definitions of what constitutes o9 confidential and proprietary information, the obligations of o9 employees to maintain the confidentiality of such materials and information, and the obligations of employees to return company property at the termination of employment." *Id.*, ¶¶ 60-67.

> Courts commonly find that a plaintiff sufficiently alleges misappropriation by asserting that the defendants copied trade secrets onto external drives or emailed such files using a personal email when the defendants are subject to confidentiality agreements or other privacy policies. For example, the plaintiff presented adequate evidence of misappropriation based on claims that the defendant took materials he knew were trade secrets and improperly copied them to a personal USB drive prior to his departure despite his obligations under various agreements.
>
> Further, circumstantial evidence such as a defendant's motivation and leaving the plaintiff to work for a competitor doing substantially similar work also often indicates misappropriation.

*Centennial Bank*, 717 F. Supp. 3d at 563-64 (cleaned up).

Consistent with this standard, "*Twombly* and *Iqbal* do not require [exacting] specificity," which is why "the Federal Rules afford to plaintiffs" the ability to state a

facially plausible claim based on the reasonable inferences permitted by the facts alleged. *Bryant*, 2024 WL 890122, at *2; *see also, e.g.*, *id.* at *3 ("A plaintiff can allege that objects dropped in water generally get wet; the defendant dropped an object in water; and that it is therefore highly likely the object got wet. Sure, it is possible that the defendant's particular object somehow escaped the water by landing on a boat or an animal. But just as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

Here, the complaint plausibly alleges that each Individual Defendant misappropriated o9's trade secrets based on its factual content and the reasonable inferences that content affords.

For example, as o9 sets out in its opposition to this motion to dismiss,

> [w]ith respect to acquisition of the stolen files, each of the Individual Defendants participated in taking thousands of o9 trade secret files to bring to SAP. *See generally* Complaint, ¶¶ 1-15, 75-112. By as early as November 2024, Individual Defendant de Barse was in close contact with SAP executives about joining SAP. *Id.*, ¶ 82. Individual Defendant de Barse solicited Individual Defendants Zonneveld and van Houten to join him, and de Barse coordinated with them both to steal o9's trade secrets, collectively downloading thousands of trade secret files over the proceeding months, including after de Barse joined SAP. *Id.*, ¶¶ 85, 92. With respect to Individual Defendant van Houten, for example, de Barse and van Houten met for breakfast on December 30, 2024, and that same day, Individual Defendant van Houten mass downloaded nearly 10,000 files, and then downloaded thousands more before he left o9, including over 2,500 files over the New Year holiday while he was purportedly on paid time off from o9. *Id.*, ¶¶ 93, 95. Similarly, on December 30, 2024 Individual Defendant Zonneveld sent a "test" email to his personal email and the following day sent himself an email with the subject line "Download Spullen" (which translates, Dutch-to-English, as "Download Stuff"), before subsequently downloading thousands of o9's trade secret files. *Id.*, ¶¶ 94, 97. These downloads were highly unusual and served no legitimate business purpose for o9. *Id.*, ¶ 95. Tellingly, on January 31, 2025, Individual Defendant Zonneveld downloaded hundreds of files

> concerning Henkel (a customer that o9 and SAP compete for), and just days later Individual Defendant de Barse exchanged emails with SAP's leadership regarding "Alignment Henkel." *Id.*, ¶ 101. Individual Defendant Zonneveld subsequently met with SAP executives and created and copied o9-client-specific folders containing o9's trade secret files and even forwarded himself an email with o9's trade secret files. *Id.*, ¶¶ 98-100; *see also id.*, ¶ 149 (alleging Individual Defendants Messrs. van Houten and Zonneveld copied or uploaded o9's trade secrets to an external hard drive, personal Google drive, other cloud-based software, or by transferring the trade secrets to their personal emails, including after they each accepted employment with SAP). Acquiring o9's trade secret files in this manner was improper and a violation of their obligations to o9, in addition to constituting misappropriation by SAP.

Dkt. No. 44 at 21-22; *id.* at 23 ("o9's Complaint alleges that a few months after the Individual Defendants joined SAP, with o9's trade secret files in hand (including those illegally downloaded by Individual Defendant van Houten and Individual Defendant Zonneveld, such as files about 'Henkel'), Individual Defendant de Barse reposted an article on behalf of SAP titled 'Henkel Partners with SAP to Implement AI-Assisted Returns and Exchanges Management Process' with the exact kind of solutions that o9 had been developing, including for Henkel. Complaint, ¶ 101. And this is just one example – o9 alleges that based on the nature and timing of the downloads, the communications with SAP, and the Individual Defendants' subsequent attempt to cover their tracks, the Individual Defendants disclosed o9's trade secret files to SAP for use in SAP's business to compete against o9. *Id.*, ¶¶ 83, 99.").

And, so, o9's complaint does much more than speculate that the Individual Defendants misappropriated its trade secrets. And, to the extent that the Individual Defendants may disagree as to the inferences that can de drawn from o9's factual

content, because there are more than sufficient factual allegations to support o9's version of events, the scales tip in its favor at this preliminary stage, where "all well-pleaded facts [are accepted] as true" and viewed "in the light most favorable to the plaintiff." *Katrina*, 495 F.3d at 205-06.

## II. The Court should deny the *forum non conveniens* motion.

A district court may employ the doctrine of *forum non conveniens* to "decline to exercise its jurisdiction and dismiss a case that is otherwise properly before it so that the case can be adjudicated in another forum." *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020).

And, so, its underlying "simple premise … is 'that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized.'" *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 423 (5th Cir. 2001) (quoting *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 341 (5th Cir. 1999)).

Defendants have "the burden of establishing that the doctrine of *forum non conveniens* applies" – this burden "runs to all the elements of the *forum non conveniens* analysis." *Kimberly-Clark*, 2005 WL 2679698, at *3 (cleaned up). Indeed, "a court abuses its discretion by not holding a moving defendant to his burden on all elements of [this] analysis." *Rajet Aeroservicios S.A. de C.V. v. Castillo Cervantes*, 801 F. App'x 239, 244 (5th Cir. 2020) (per curiam) (citation omitted).

And, "[w]hile the burden is on the movant to establish that an alternative forum would be clearly more convenient, it need not submit overly-detailed affidavits, such as those that identify all the witnesses it would call and the testimony it would offer." *Kimberly-Clark*, 2005 WL 2679698, at *3 (citation omitted).

That is because "[t]he forum non conveniens motion is made precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview, such that requiring extensive investigation would defeat the purpose of the motion." *Id.* (cleaned up).

Even so, "the movant must provide enough information to enable the District Court to balance the parties' interests," and "[t]he court must review the motion in light of the status of the case at the time the motion was filed." *Id.* (cleaned up).

Because the doctrine "'presupposes at least two forums where the defendant is [amenable] to process and simply furnishes criteria for choice between them,'" "[a] defendant seeking dismissal on this basis [ ] must show that there is an alternate forum that is both available and adequate." *Innovation First Int'l, Inc. v. Zuru, Inc.*, 513 F. App'x 386, 390 (5th Cir. 2013) (per curiam) (quoting *Dickson Marine*, 179 F.3d at 342; then citing *McLennan*, 245 F.3d at 424).

"A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum," and "[a] foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *McLennan*, 245 F.3d at 424 (quoting *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)).

> Once the defendant establishes that there is a satisfactory alternate forum, the district court must balance a defined set of private and public interest factors to determine whether dismissal is warranted. The focus of this inquiry is convenience. The private interest factors relate primarily to the convenience of the litigants, and are (1) the relative ease of access to sources of proof; (2) the availability of

> compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors concern whether the plaintiff's chosen forum would be unnecessarily burdensome to the court or the community. They are [1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

*Innovation First*, 513 F. App'x at 390-91.

"[T]he plaintiff's choice of forum is entitled to great weight in the balancing of factors, and unless the balance strongly favors the defendants, the plaintiff's choice of forum should not be overturned." *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 830 (5th Cir. 1986).

"But neither the citizen' choice of his home forum nor any one private or public interest factor is dispositive." *Innovation First*, 513 F. App'x at 391 (cleaned up).

Even so, the Fifth Circuit has "held that where the private interest factors as a whole favor dismissal, a court may dismiss a case on *forum non conveniens* grounds." *Id.* (citing *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*, 955 F.2d 368, 376 (5th Cir. 1992)).

Similarly, "even when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant a *forum non conveniens* dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute or that foreign law will predominate if jurisdiction is retained." *Id.* (quoting *In re Air Crash Disaster Near*

*New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1165-66 (5th Cir. 1987), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989)).

The Netherlands is an available forum, as SAP SE and SAP America, Inc., to the extent that neither is subject to a Dutch court's general jurisdiction, "consent to the jurisdiction of the Dutch courts for purposes of litigating this case." Dkt. No. 25 at 5 n.1 (SAP Defendant's motion to dismiss); Dkt. No. 41 at 2 n.1 (parties' joint status report); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1249 (5th Cir. 1983) ("find[ing] that the conditional dismissal, by inducing defendant's submission to the jurisdiction of an alternative forum, is one particularly effective manner of assuring that the alternative forum is available" (footnote omitted)).

The Netherlands is also an adequate forum.

> "[T]here is a presumption that the substantive law of a foreign forum is adequate." *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 728 (5th Cir. 1990). For purposes of a *forum non conveniens* analysis, "[a]dequacy does not require that the alternative forum provide the same relief as an American court." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007) (citation modified). Instead, "[a] foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the benefits of an American court." *Id.* But the [United States] Supreme Court has clarified that, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, ... the district court may conclude that dismissal would not be in the interests of justice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981).

*OSR Enters. AG v. REE Auto., Ltd.*, No. 24-50779, 2025 WL 2888000, at *2 (5th Cir. Oct. 10, 2025) (per curiam) (cleaned up).

Both sides offer dueling opinions from Dutch lawyers. *See* Dkt. Nos. 23-12; 45-3. The undersigned has carefully reviewed both and finds that o9's Dutch legal opinion fails to support its burden to show that the Netherlands is not an adequate

forum under the applicable case law – that is, that, if this lawsuit was dismissed in favor of litigation there, o9 would have "no remedy at all."

For example, o9 argues against the Netherlands being adequate in part because Defendants' Dutch lawyer hesitates to say that a Dutch court would certainly enter a worldwide injunction against misappropriation. *See* Dkt. No. 45 at 13 (citing Dkt. No. 23-12, ¶¶ 58-61). But, based on the undersigned's review of both opinions, whether a Dutch court would issue an injunction outside the European Union is at best an open question. *See, e.g.*, Dkt. No. 45-3, ¶ 59 ("To the best of my knowledge, there is no Dutch case law in which worldwide injunctive relief for trade secret misappropriation was ever granted, let alone against non-Dutch entities, and certainly not outside of the European territory.").

That's not enough to say that the Netherlands is not an adequate forum. *Cf. OSR*, 2025 WL 2888000, at *2 ("OSR and REE presented competing expert declarations from Israeli lawyers that reached opposite conclusions. OSR's expert averred that it is 'very likely' that Israel would not enjoin extraterritorial trade secret misappropriation, while REE's expert averred that Israel can – and will – issue extraterritorial injunctions.... OSR's expert only discusses 'very likely' possibilities, and he relies on Israeli cases that REE's expert distinguishes. Because its evidence does not indicate that OSR will be left with 'no remedy at all,' OSR has not overcome the presumption that Israel is an adequate forum.").

o9 also cites authority from the United States Courts of Appeals for the Federal and Fourth Circuits (*Halo Creative* and *dmarcian*), in which the foreign forum was

determined to not be adequate based on the intellectual property claims at issue in each case (copyright and trademark infringement).

> The lack of a remedy for **<u>certain</u>** intellectual property claims proves fatal to the adequacy of the alternative forum. Other circuits share this understanding. The Federal Circuit has explained that it is "particularly important that a forum non conveniens movant demonstrate the adequacy of an alternative forum when the dispute implicates the enforcement of intellectual property rights." *Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366, 1373 (Fed. Cir. 2016). Without an adequate forum to vindicate U.S. copyright, patent, and trademark rights, the laws protecting such rights would prove feeble. That is why district courts have "routinely" found alternative foreign forums inadequate "when United States intellectual property rights form the crux of the dispute." *Id.*; *see also Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1043 (9th Cir. 2022) (quoting same language).

*dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 137 (4th Cir. 2023) (emphasis added); *see id.* at 136 ("The district court was correct to conclude that the Dutch court's inability to effectively adjudicate American trademark law claims disqualified it as an adequate forum.").

Neither copyright nor trademark nor patent law claims are at issue in this lawsuit.

And, in both the Federal Circuit and Fourth Circuit cases on which o9 relies, unlike here,

> the foreign jurisdiction lacked a sufficient nexus to the conduct at issue, raising the specter that the foreign forum could not remedy the alleged infringement. *See Halo Creative*, 816 F.3d at 1373 ("[T]here is no evidence that any predicate act occurred in Canada, and no authority that Canada would provide a remedy for United States infringement ...."); *dmarcian*, 60 F.4th at 137, 141 (noting that the defendant "originally gained access to" and "facilitated the ... use or disclosure" of the IP "within the United States" and, correspondingly, that Dutch courts could not remedy such conduct (cleaned up)); *Lang Van*, 40 F.4th at 1037, 1043 (explaining that the defendant released the infringing

> material "into the United States" and that Vietnamese law did not provide "a realistic avenue" for relief (citation omitted)); *Jose Armando Bermudez & Co. v. Bermudez Int'l*, No. 99 Civ. 9346, 2000 WL 1225792, at *2-4 (S.D.N.Y. Aug. 29, 2000) (describing infringing activity confined to the United States and concluding that Dominican courts thus could not "grant an adequate remedy to plaintiff").

*Sysco Mach. Corp. v. Cymtek Solutions, Inc.*, 124 F.4th 32, 40 (1st Cir. 2024) (cleaned up); *compare also id.* ("By contrast, in IP cases with sufficient foreign nexuses – like the one at bar – U.S. courts have repeatedly granted forum non conveniens dismissals on the grounds that, in applying their own domestic law, foreign courts could fashion remedies that adequately addressed the conduct that allegedly violated U.S. IP law. That is, in such cases, foreign courts may still prove adequate for adjudicating disputes that implicate U.S. IP law, even if those courts would not or could not apply U.S. IP law."), *with Uniface B.V. v. Sysmex Am., Inc.*, 20 CV 6478, 2021 WL 2291075, at *5 (N.D. Ill. June 4, 2021) ("[A]s admitted by Mr. Van Asbroeck in his declaration, the alleged violations of Uniface's copyrights 'do not concern any use, reproduction, or distribution by Sysmex of the copyrighted Uniface software on the Belgian territory.' Rather, 'all alleged violations ... have taken place in the US or Canada.' Accordingly, Sysmex has failed to provide sufficient evidence that Belgium is an adequate forum to redress copyright infringement that occurred in the United States."); *see also Chongqing Qiulong Tech. Corp. Ltd. v. Tanli Power Tech. (Chongqing) Co., Ltd.*, No. 1:23-CV-00442-RP, 2024 WL 4448843, at *4-*5 (W.D. Tex. Sept. 19, 2024) (considering *Halo* and observing that "the core concern here" is "that Plaintiff here has the right to pursue its rights in its *American* patents here in an *American* court" and that, "[b]ecause Defendants have not shown that the Chinese

forum is adequate to vindicate these rights, their motion to dismiss on *forum non conveniens* grounds should be denied" (emphasis in original), *rec. adopted*, 2024 WL 444724 (W.D. Tex. Oct. 8, 2024).

But, even assuming that the Netherlands is an available and adequate forum, Defendants still have not carried their burden under the balancing-of-interests standard to "demonstrate that [the Netherlands] is a significantly more convenient forum," *Kimberly-Clark*, 2005 WL 2679698, at *9, especially considering that o9's choice of forum remains entitled to deference even though it has operations in the Netherlands, *see Innovation First*, 513 F. App'x at 392 (finding "reasonable" the district court's analysis that it "would not be *inconvenient*" for a plaintiff "international company with facilities in the alternate forum" to litigate there, so plaintiff's choice of forum should be afforded "'somewhat lessened' deference" (emphasis in original)).

"Regarding the first private interest factor" – "which forum provides easier access to sources of proof" – "the movant has the burden to … actual[ly] show[] the existence of relevant sources of proof, not merely [ ] express[] that some sources likely exist in the prospective forum." *Def. Distributed*, 30 F.4th at 434.

As to witnesses, Defendants contend that "[t]his case in all likelihood will be witness-heavy" and that "[t]he overwhelming majority of such witnesses are located in the Netherlands and Europe." Dkt. No. 23 at 20; *see id.* at 20-22 (acknowledging that o9's CEO and president are relevant witnesses who are both based in Dallas but pointing out that "[o]ther potential witnesses are current or former o9 employees the

Individual Defendants are alleged to have recruited into SAP in violation of non-solicitation covenants"; that "[t]he Complaint identifies eight in paragraphs 87-88. None are based in Texas and seven are in Europe or Asia: four in Amsterdam, one in Singapore, one in Spain, and one in Germany. The only such employee in the United States is based in New York, not Texas." (citations omitted)).

The witnesses that Defendants point to as identified in the complaint are alleged to be SAP employees. *See* Dkt. 1, ¶ 88; Dkt. No. 45 at 23 ("Individual Defendants did not explain whether each of these individuals will testify in this Action. Further, these individuals are SAP employees, and SAP does not join this Motion or submit evidence that providing testimony would be inconvenient; indeed, SAP has strong presence in the United States as a global organization with multiple offices in Texas." (citation omitted)).

But, "in the context of this factor," the focus is "whether there are third-party witnesses in the United States or [the Netherlands] from whom discovery may become difficult to obtain if the case is litigated in a foreign court" since the Court "can compel parties to the suit to produce discovery." *Tempur-Pedic Int'l, Inc. v. GoSatellite, Inc.*, 758 F. Supp. 2d 366, 380 (N.D. Tex. 2010).

And both sides identify potentially applicable third parties in Texas and abroad. But it is too early in this case to determine how crucial any of these true third parties may be to this litigation.

As to documentary evidence, Defendants assert that "[a]ccessibility of documents should not have much impact under this factor, given the ubiquity of

electronic discovery and document exchange." Dkt. No. 23 at 23. While o9 counters, for example, that

> "[e]lectronic devices issued to former o9 employees who later joined SAP are stored in the United States. Further, there is no dispute that documents in SAP's possession that are relevant to SAP's access and use of o9's trade secrets and benefits SAP has received from using o9's trade secrets to compete against o9 in the United States are predominantly in SAP's offices in Texas. Individual Defendants have not identified any relevant documents or devices in their possession that are in the Netherlands and cannot be electronically transferred to the United States.

Dkt. No. 45 at 22.

And, while advances in technology have "not render[ed] this factor superfluous," *Volkswagen*, 545 F.3d at 316; *see, e.g.*, *OSR*, 2025 WL 2888000, at *4 & n.6, this aspect of the first factor is at least neutral considering that both sides cite electronic sources of proof that are located in both forums, *see, e.g.*, *Wilson v. Tex. Christian Univ.*, No. 3:20-cv-106-M, 2021 WL 12289114, at *2 (N.D. Tex. Aug. 2, 2021) ("Defendants do not contend that the documents are 'so voluminous' that their transport would be inconvenient. And while technological advances do not render this factor superfluous, the fact that the documents are required to be submitted electronically throughout the Northern District of Texas further minimizes whatever slight inconvenience there may be." (citation omitted)).

And, so, Defendants have not shown that this factor favors litigating in the Netherlands.

"Access to compulsory process for non-party witnesses is the gravamen of the second private interest factor." *Def. Distributed*, 30 F.4th at 434 (citation omitted). As to these such witnesses, 'the moving party must do more than make a general

allegation that certain key witnesses are needed' and must [instead] 'specifically identify the key witnesses and outline the substance of their testimony.'" *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 710 (S.D. Tex. 2011) (quoting *Hupp v. Siroflex of Am., Inc.*, 848 F. Supp. 744, 749 (S.D. Tex. 1994)).

Defendants have not done so to the extent that they have only identified witnesses who are the SAP employees identified in the complaint and have also not "outline[d] the substance of their testimony." *Id.*; *see* Dkt. No. 23 at 24-25.

And, so, Defendants have not shown that this factor favors litigating in the Netherlands.

And, based on the parties' briefing and evidence, the remaining two private interest factors – the cost of attendance for willing witnesses and all other practical problems that make trial of a case easy, expeditious and inexpensive – are at best neutral and, in any event, do not favor the movants "where the result is merely to shift the inconvenience of the venue from one party to the other." *Pension Advisory Grp.*, 771 F. Supp. 2d at 710 (quoting *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 750, 761 (N.D. Tex. 2009)); *accord Exxon Mobil Corp. v. Exxonmobil for Exp., Imp. & Trade Ltd.*, No. 3:12-cv-1122-P, 2013 WL 12124587, at *9 (N.D. Tex. Jan. 25, 2013) ("At the very best, a dismissal in favor of a foreign country appears to flip-flop the discomfort from one side to the other.").

So the private interest factors considered together tip toward o9 or are at least neutral and thus do not favor dismissal, even if the Court were to discount its deference to o9's choice of forum.

Balancing the public interest factors yields the same outcome.

Both sides agree that the administrative-difficulties factor is neutral or not applicable, *see* Dkt. No. 23 at 25-26; Dkt. No. 45 at 26-27, so its consideration weighs against dismissal.

As to the local interest in having localized controversies decided at home, that too does not favor dismissal, considering that Defendants urge that, to the extent that this is really just an employment dispute, the Netherlands wins out, while o9 argues that, in this trade secret misappropriation case, Texas has a strong interest. *See, e.g.*, Dkt. No. 45 at 27 ("o9, a Texas company, filed claims for U.S. law-governed claims of trade secret misappropriation and breach of contract for injuries suffered at o9's Dallas headquarters.").

And, so, the undersigned also cannot find that the fifth public interest factor – the unfairness of burdening citizens in an unrelated forum with jury duty – favors dismissal where it would not be unfair to have a Texas jury consider this case.

The third and fourth public interest factors deal with which forum is at home with the governing law and the avoidance of unnecessary problems in conflict of laws or in the application of foreign law. These factors weigh in o9's favor.

For example, even if these claims were litigated in the Netherlands, it's still possible that U.S. law could apply. *See* Dkt. No. 23-12, ¶ 9 (Movants' Dutch lawyer's "analysis furthermore indicates that that the Dutch courts – if seized of this action – would apply to any contractual claims brought by o9 the law chosen in the relevant agreements. As to the non-contractual claims, I deem it likely that the Dutch courts

would apply Dutch law as the law manifestly most closely connected to the case against the Individual Defendants. However, it is also possible that the Dutch courts will apply the law(s) of the place(s) where the alleged damage occurred. This will depend in part on how exactly o9 structures a potential Dutch case.").

Regardless, the "mere possibility" that foreign law might apply does not advance Defendants' efforts. *See Raytheon Eng'rs & Constructors, Inc. v. H L H & Assocs. Inc.*, 142 F.3d 1279, 1998 WL 224531, at *5 (5th Cir. Apr. 17, 1998) (per curiam) ("The mere possibility that Panamanian law might apply … is in no way sufficient to overcome the interest that the United States courts have in adjudicating a claim brought under [a federal statute] by a United States company where two of the other defendants are also United States companies.").

**Recommendation**

The Court should deny Defendants Stephan de Barse, Stijn-Pieter van Houten, and Sean Zonneveld's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 20] and to dismiss based on *forum non conveniens* [Dkt. Nos. 22 & 23] and deny Defendants SAP SE and SAP America, Inc.'s motion to dismiss under Rule 12(b)(6) and, in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e) [Dkt. No. 25].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 11, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE